IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAMARA G., | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:22-CV-631-D-BK |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| DEFENDANT. | § | |

FINDINGS, RECOMMENDATIONS, AND CONCLUSIONS
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(c) and *Special Order 3*, *Plaintiff's Brief Appealing the Denial of her Disability Claim*, Doc. 14, which the Court construes as a motion for summary judgment, and Defendant's *Motion for Summary Judgment*, Doc. 16, are before the Court for findings and a recommended disposition. For the reasons that follow, Plaintiff's construed *Motion for Summary Judgment* should be **DENIED**, Defendant's *Motion for Summary Judgment* should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits under the Social Security Act ("the Act"). Doc. 1. Plaintiff filed her application in August 2020, stating that she became disabled in June 2020. Doc. 9-1 at 201. Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g).

### B. Factual Background

Plaintiff was 56 years old on her alleged disability onset date and has a college education with past relevant work as an operations manager, collections manager, accounting clerk supervisor, and personnel manager.  Doc. 9-1 at 26.  In terms of her relevant medical history, Plaintiff alleged disability due to bilateral bronchiectasis[1], asthma, bilateral knee replacements, cystic fibrosis, sleep difficulties, shortness of breath, anxiety, high blood pressure, and adult attention deficit hyperactivity disorder ("ADHD").  Doc. 9-1 at 75.

### C. The ALJ's Findings

In October 2021, the ALJ issued an opinion finding that Plaintiff has the severe impairments of (1) bilateral arthroplasty; (2) asthma/chronic obstructive pulmonary disease with bronchiectasis/allergic rhinitis/sinusitis with deviated septum status-post balloon sinuplasty; and (3) obesity.  Doc. 9-1 at 23, 30.  Based on the state agency medical consultants' conclusions, the ALJ found that Plaintiff's ADHD and anxiety were non-severe and caused only mild functional limitations in her abilities to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt and manage herself.  Doc. 9-1 at 24-25, 79.  Next, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work with some postural limitations and could not be exposed to pulmonary irritants more than occasionally.  Doc. 9-1 at 26.  The ALJ concluded Plaintiff had

---

[1] Bronchiectasis is a "chronic dilation of bronchi or bronchioles as a sequel of inflammatory disease or obstruction often associated with heavy sputum production."  Stedman's Medical Dictionary 124050.

the RFC to perform her past relevant work, and as such, she was not disabled for purposes of the

Act.  Doc. 9-1 at 29-30.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C.

§ 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine

whether a claimant is disabled:  (1) an individual who is working and engaging in substantial

gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not

disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the

regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing her past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes her from performing her past work, other factors

including age, education, past work experience, and RFC must be considered to determine if any

other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam)

(summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the

Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden

shifts to the Commissioner at step five to show that there is other gainful employment available

in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994).  This burden may be satisfied either by reference to the Grid Rules, vocational

expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III. ARGUMENT AND ANALYSIS

### A. RFC Finding

Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not conduct a function-by-function analysis of Plaintiff's mild mental impairments of anxiety and ADHD or incorporate those limitations into the RFC. Doc. 14 at 4-11. Defendant responds that the ALJ was not required to impose limits on Plaintiff's RFC due to

her mental impairments because the ALJ correctly found that Plaintiff's anxiety and ADHD were not severe. Doc. 16 at 7-9.

But in assessing a claimant's RFC, an ALJ must consider the limiting effects and restrictions imposed by all the claimant's impairments, even those that are not severe. 20 C.F.R. § 404.1545(e); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Stated differently, the RFC is the most a claimant can do, notwithstanding her physical and mental limitations. To assess the severity of a claimant's mental impairments and their effect on a claimant's ability to work, the Commissioner follows what is commonly called the "technique." 20 C.F.R. § 404.1520a(a). In applying the technique, an ALJ must first decide whether the claimant has a medically determinable mental impairment ("MDI"). *Id.* § 404.1520a(b)(1). As noted above, the ALJ determined that Plaintiff had the MDIs of ADHD and anxiety.

Under the technique, the ALJ then must rate the degree of limitations resulting from Plaintiff's MDIs in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence, or maintaining pace; and (4) adapting or managing oneself. *Id.* § 404.1520a(c)(3). To complete this step, the ALJ rates the claimant's degree of limitation in each area as "[n]one, mild, moderate, marked, or extreme." *Id.* § 404.1520a(c)(4). These ratings then inform the ALJ's conclusions at subsequent steps of the sequential analysis. *Id.* § 404.1520a(d). Here, the ALJ determined that Plaintiff's mental impairments would cause her no more than mild limitations in each of the four functional areas. Doc. 9-1 at 24-25.

The ALJ's evaluation of mental limitations at this step, however, is "not an RFC assessment but [is] used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. The subsequent mental

RFC assessment requires a more detailed analysis in which the ALJ must consider a claimant's mental disorders and express them in terms of work-related functions, including the claimant's ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting." *Id.* at *4, 6. Nevertheless, "[c]ourts within this district have found no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Audrey M. D. v. Comm'r of Soc. Sec.*, No. 3:21-CV-02425-B-BT, 2022 WL 18356464, at *2 (N.D. Tex. Dec. 28, 2022) (Rutherford, J.) (quoting *Martha L. v. Saul*, No. 1:20-CV-00003-H-BU, 2021 WL 3610316, at *5 (N.D. Tex. July 27, 2021)), *adopted by* 2023 WL 223178 (N.D. Tex. Jan. 17, 2023) (Boyle, J.).

In this case, the ALJ's assessment of Plaintiff's mental impairments in the RFC determination is admittedly scant. First, the ALJ stated "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." Doc. 9-1 at 25. Additionally, the ALJ noted in the RFC analysis that Plaintiff alleged difficulty in sustaining the concentration and focus required for skilled work but ultimately did not impose any limitations based on Plaintiff's mental impairments. Doc. 9-1 at 26-28. It is questionable whether this constitutes a sufficiently detailed analysis under SSR 96-8.

Any potential error in this regard, however, is harmless because Plaintiff has not demonstrated that she could adduce evidence that would change the outcome of the proceedings. *See Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996) (holding that to demonstrate prejudice,

"a claimant must show that he 'could and would have adduced evidence that might have altered the result.'") (citation omitted).  First, Plaintiff points to no medical evidence in the record which would support the need for mental limitations in the RFC.  The Court is not obligated to sift through the record on her behalf.  *Adams*, 465 F.3d at 164.  Even so, the medical evidence does not support Plaintiff's position.

As an initial matter, there is no indication that Plaintiff sought mental health treatment aside from obtaining prescription medications from her treating provider.  Doc. 9-1 at 230, 287, 397; *see generally Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").  What's more, Plaintiff repeatedly reported that her ADHD medication was effective in improving her focus and concentration, she experienced no side effects, was "overall much better functioning on several levels," and she wished to continue the medication.  Doc. 9-1 at 358, 388, 415, 626.  Plaintiff also testified that while her bronchiectasis medication affected her focus and concentration, she did not experience any ADHD symptoms.  Doc. 9-1 at 56-57.  Additionally, during numerous examinations, Plaintiff exhibited normal mood, affect, behavior, speech, judgment, and thought content, and she was alert, oriented, and not confused.  *See, e.g.*, Doc. 9-1 at 324, 334, 360, 484, 627.  Plaintiff also repeatedly denied suffering from anxiety.  *See, e.g.*, Doc. 9-1 at 341, 642, 646, 654, 702, 727.  Indeed, the few mentions of anxiety in the medical records appeared to be situational in nature.  *See, e.g.*, Doc. 9-1 at 351-53 (noting anxiety associated with ongoing rash and skin lesions covering her extremities); Doc. 9-1 at 397 (noting anxiety due to her surgery and her mother's health problems).

In short, the Court's review of the record reveals substantial evidence which supports the ALJ's decision not to include any limitations in the RFC assessment based on Plaintiff's mental

impairments.  *Cf. Jeansonne v. Saul*, 855 F. App'x 193, 197-98 (5th Cir. 2021) ("Because substantial evidence shows that [the claimant's] mild mental limitations do not significantly affect her ability to work, we also find no error at step five—whether the impairment prevents the claimant from performing any other substantial gainful activity."); *Ross v. Colvin*, No. 4:12-CV-283-Y, 2013 WL 5423980, at *8-10 (N.D. Tex. Sept. 27, 2013) (finding that "it is inconceivable that a different administrative conclusion on the issue of [the claimant's] ability to perform her past relevant work would have been reached absent the ALJ's error in failing to include mental limitations supported by the evidence in [the claimant's] RFC.").  Plaintiff thus has not demonstrated prejudice stemming from any potential error by the ALJ's RFC determination.  *See Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err.").

### B. Appointments Clause Challenge

Plaintiff next asserts that the ALJ and Appeals Council judges (the "Judges") lacked the constitutional authority to adjudicate her claim for benefits.  Specifically, Plaintiff urges that the Judges were not properly appointed by former Acting Commissioner Nancy Berryhill ("Berryhill") because her term exceeded the statutory limit established in the Federal Vacancies Reform Act ("FVRA").  Doc. 14 at 11-12.

By way of background, in *Lucia v. SEC*, the Supreme Court held that ALJs for the Securities and Exchange Commission ("SEC") had been unconstitutionally appointed.  *Lucia v. SEC*, 138 S. Ct. 2044, 2050 (2018).  Under the Appointments Clause of the Constitution, only the president, "Courts of Law," or "Heads of Departments" may appoint "Officers of the United States."  U.S. CONST. Art. II, § 2, cl. 2; *Lucia*, 138 S.Ct. at 2050.  Because the *Lucia* Court

determined that the SEC's ALJs were "officers," rather than mere employees, their appointment

by SEC staff, rather than the head of the agency, violated the Constitution. *Lucia*, 138 S.Ct. at

2047, 2055.

      Similarly, Social Security Administration ("SSA") Judges must be properly appointed

under the Constitution. *Carr v. Saul*, 141 S.Ct. 1352, 1357 (2021). Like the ALJs at issue in

*Lucia*, SSA ALJs were "selected by lower-level staff rather than appointed by the head of the

agency." *Id.* In July 2018, Berryhill ratified all appointments of the then-serving SSA judges to

cure any potential *Lucia* challenge based on their initial appointment by an officer other than the

Commissioner. *See* SSR 19-1p, *Titles II and XVI: Effect of the Decision in Lucia v. Securities

and Exchange Commission (SEC) on Cases Pending at the Appeals Council*, 84 Fed. Reg. 9582,

2019 WL 1202036 (Mar. 15, 2019).

      As relevant to the issue presently before the Court, the FVRA provides that "the person

serving as an acting officer as described under section 3345 may serve in the office—(1) for no

longer than 210 days beginning on the date the vacancy occurs; or (2) . . . once a first or second

nomination for the office is submitted to the Senate, from the date of such nomination for the

period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a)(1)-(2). Defendant

represents that Berryhill was designated Acting Commissioner on January 21, 2017 and served

for the following 210 days at which point her appointment expired. Doc. 16 at 11. On April 17,

2018, well past the 210-day mark, the President nominated Andrew Saul ("Saul") as

Commissioner. Doc. 16 at 11. Upon the submission of Saul's nomination, Berryhill resumed

her service as Acting Commissioner and served until Saul was sworn in as Commissioner. Doc.

16 at 11.

Upon consideration of the law and the parties' arguments, the Court concludes that Berryhill's period of acting service did not violate the FVRA's term limits when she ratified the appointment of the Judges during the pendency of Saul's nomination. The majority of courts have held that section 3346(a)(2) contains a "spring-back" provision that enabled Berryhill to resume her role as Acting Commissioner on the day Saul was nominated as Commissioner. *See Seago v. Kijakazi*, No. 1:21-CV-136, 2022 WL 17853369, at *6 (S.D. Tex. Nov. 15, 2022) (collecting cases), *adopted by* 2022 WL 17852795 (S.D. Tex. Dec. 22, 2022), *appeal filed*, Jan. 3, 2023 (5th Cir.) (No. 23-40001); *Boller v. Comm'r, SSA*, No. 4:21-CV-01001-SDJ-CAN, 2022 WL 18586837, at *7 (E.D. Tex. Dec. 12, 2022) (same), *adopted by* 2023 WL 1765909 (E.D. Tex. Feb. 3, 2023); *see also Coe v. Kijakazi*, No. 5:22-CV-226-KDW, 2023 WL 554119, at *11-12 (D. S.C. Jan. 27, 2023) (same); *Michelle A. v. Kijakazi*, No. 6:22-CV-02017-LRR, 2023 WL 199679, at *14-16 (N.D. Iowa Jan. 17, 2023) (same); *Hernandez v. Kijakazi*, No. CV-22-01556(FLW), 2022 WL 17751355, at *12 (D. N.J. Dec. 19, 2022) (same); *but see Brian T. D. v. Kijakazi*, 580 F. Supp. 3d 615, 634-35 (D. Minn. 2022) (reaching opposite conclusion), *appeal filed*, Mar. 22, 2022 (8th Cir. ) (No. 22-1601).

The Court agrees with the weight of authority. The plain language of section 3346(a) establishes when an officer "may serve." It does not purport to establish when such service must end. To be clear, nothing in the statute conditions "acting service" on the submission of a nomination within 210 days. *See Seago*, 2022 WL 17853369, at *6. After a nomination is submitted, the statute plainly provides that the acting officer may continue to serve in that capacity until the nomination is no longer pending. Accordingly, when Berryhill ratified the Judges' appointments in July 2018, after Saul was nominated, she had the requisite statutory

authority to serve as Acting Commissioner under the FVRA until Saul was subsequently

confirmed.  Thus, Plaintiff's second argument fails.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's construed *Motion for Summary Judgment*, Doc. 14,

should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 16, should be

**GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on February 13, 2023.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).